UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Criminal No. 20-CR-10197-LTS |
| ) | |
| JOSHUA TEIXEIRA ) | |

**Defendant's Sentencing Memorandum**

Defendant Joshua Teixeira submits this memorandum to assist the court in arriving at a reasonable sentence that is sufficient and not greater than necessary to promote all statutory sentencing goals. For the reasons set forth below, that sentence is 60 months.

This sentence provides appropriate punishment for an offender who has never been sentenced to a term of imprisonment, who provides for and takes care of his family in every way, and who has their strong support. Mr. Teixeira has the character, values, and ability to put his criminal past behind him and to live a law-abiding life as a contributing member of society.

**Argument**

**1.      A 60-Month Sentenced Is Appropriate For This Offense Committed By This Defendant**

   **A.      Mr. Teixeira's History and Characteristics**

Loyalty. Love for family and friends. A sense of shared responsibility that manifests itself in caring for and protecting others. Properly focused, these are the qualities that make Mr. Teixeira a respected and responsible member of his close family and a contributing member of society. Improperly focused on his friends, NOB, and its longstanding conflicts that date back to before Mr. Teixeira was born, these same qualities also led him astray. The court should

recognize the promise in Mr. Teixeira, believe in his resolve to lead a better and law-abiding life, acknowledge his capacity to do so, and impose the sentence he seeks.

Mr. Teixeira showed what type of person he was at a young age. His father was not present in his life. His mother did what she could, but she more frequently needed Mr. Teixeira to take care of her. She was sick throughout Mr. Teixeira's childhood, experiencing kidney failure, two kidney transplants, and Lupus, leading to the amputation of one of her legs and one of her feet. *See* Letter, Joshua Teixeira, attached as Exhibit 1 at 1.[1] Mr. Teixeira's aunt Melanie Gomes writes that "[w]hen Joshua's mom got sick it was hard on Joshua, he felt like he had to take care of her and himself. He couldn't be a kid and she couldn't show up at school events and awards like other parents. … He was very protective of her as well and felt like he was the man of the house and needed to take care of her." Ex. 1 at 3.

Mr. Teixeira's mother writes that Mr. Teixeira "has taken care of me more than I have taken care of him. I got very sick very early on in Joshua's life, so he's always felt like he had to … provide for me physically and mentally. He forgot that he was a child." Ex. 1 at 5.

Mr. Teixeira's mother is not the only family member he cares about and looks out for. His cousin Kevin Teixeira grew up in the same household and writes that "Joshua was always there for me when I needed him, he is very supportive, I trust him to talk to him about anything and he always gives me good advice.." Ex. 1 at 7. Mr. Teixeira's god daughter writes that "Joshua has been in my life since I was a newborn baby. Joshua has always taught me [] right from wrong and has always been like the father figure in my life." Ex. 1 at 8.

---

[1]   A letter from Mr. Teixeira and several letters from family members are attached collectively as Exhibit 1 in the order in which they are discussed and are cited as "Ex. 1 at __."

Mr. Teixeira's care for others extends beyond his family as well. Blanca Lantigua, who lost her son who was a friend of Mr. Teixeira's, writes that in the five years since her son died, Mr. Teixeira went out of his way to do whatever he could to help her: "regardless of his responsibilities or work, his son, and caring for his sick mother … he was always stopping by my house bringing flowers, food, picking up my meds, telling me stories about my late son. … I never seen a person with so much responsibilities on his shoulders yet take time of his very busy life to care about a stranger." Ex. 1 at 9.

Not surprisingly, Mr. Teixeira's own son, Jaylen, now age 7, is the center of his universe. Mr. Teixeira writes that he loves his son and has "been there for him since day one supporting him and I continue to be there by giving him advice every day on the phone." Ex. 1 at 1. His family has witnessed Mr. Teixeira's devotion to his son. His Aunt Melanie writes that "this boy means absolutely everything to him, and I mean everything, he took care of him day in and out, he taught him everything and promised never to abandon him. Or make him feel unworthy." Ex. 1 at 3. Mr. Teixeira's mother writes that Joshua "said he would never abandon his son, he would never leave him behind, and his son is so obsessed with him, he talks about him all the time, he says he can't wait for his dad to come home so he can live just him and his dad." Ex. 1 at 5. Few defendants who come before this court charged with RICO or violent and drug offenses play a similar role in the lives of their children.

Similarly few defendants charged with the types of crimes Mr. Teixeira is charged with have an extensive history of working legitimate jobs. Mr. Teixeira held two jobs during the six-year period prior to his arrest, two years at McDonalds and then for four years at a hotel. *See*

PSR at ¶¶ 132-133; Ex.1 at 5. He is only 27 years old and has been incarcerated for over two years.

Mr. Teixeira's uncle helped him get the hotel job at age 21. Sal Teixeira writes that: Joshua "started working in the hospitality industry at Club Quarters where he held the position of Guest Service Agent. His duty … was to assist every guest staying at the hotel with any request as needed." Ex. 1 at 10. His uncle describes Mr. Teixeira as "friendly, respectful, and willing to go out of his way to help others." *Id*.

During his incarceration, Mr. Teixeira has been doing what he can to make sure that he is as equipped as he can be to succeed upon release. He has obtained his GED. *See* Certificate, attached as Exhibit 2. He has been reading books about the electrician trade and hopes to train as an electrician once he is released. *See* Ex. 1 at 2. Over the 28 months he has been detained, Mr. Teixeira has only one disciplinary report for attempting to make a three-way call. *See* PSR at ¶ 4.

Mr. Teixeira plans to continue to use his time in jail to do everything he can to ensure a better future for himself and his family: "I am going to just continue turning my incarceration to education by getting into every program that could help me for a better future." Ex. 1 at 2.

Despite all of these positive attributes and devotion to helping others, Mr. Teixeira has also committed the crimes he is charged with here. He was deeply affected by the back and forth senseless cycle of death and violence in his community as he grew up. His aunt writes that "Joshua started losing friends and family members in his early teens and it affected us, but more so heavily for him because of how close he was with these family and friends. He was hurt and didn't know how to deal with the pain … The society failed him. And we failed him because we

4

didn't get him the grief help he needed." Ex. 1 at 3. There was "no therapy or counseling to help him through the pain." *Id*.

His mother writes that "Joshua has lost [] special people in his life that he was very close to. From close friends to family members that have caused huge heartbreaks within him. I seen the pain in his eyes and heart and it broke my son." Ex. 1 at 5. The same qualities that caused him to behave so admirably when it came to taking responsibility for raising himself and caring for his family led to bad choices and involvement with NOB. As his aunt so aptly puts it, "[h]e was a misguided boy who turned into a man with no guidance." Ex. 1 at 4. He lacked the tools and the skills to cope with the harsh and violent reality surrounding him. He has committed himself to making sure that will never happen again and that he will be able to give his son the love, guidance, and support he never got from his own father.

This is not offered not as an excuse. Mr. Teixeira's upbringing and how violence in his community and the death of family and friends affected him provide context for the choices that he made. Mr. Teixeira acknowledges that those choices were wrong, takes full responsibility for his actions, and accepts that the consequences are a term in prison. *See* Ex. 1 at 1. He has worked to become "a changed man … ready to lead by example, by being a productive individual for myself, my family, and my community." *Id*. at 2.

### B. Nature and Circumstances of the Offense

As a member of the NOB enterprise, Mr. Teixeira sold marijuana and participated in the violent conduct he has admitted to, most seriously, firing a handgun and getting shot in an incident more than four years ago. There is no doubt that this conduct was violent, dangerous, and harmful to the intended victims and to the community at large. He should be held

accountable for that conduct. But not for every instance of criminal conduct the government attributes to NOB.

Mr. Teixeira engaged in and has admitted to acts of violence. He fired shots which, fortunately, did not hit another human being. *See* PSR at ¶¶ 16-19. He participated in a fight at a state courthouse. *Id*. at ¶ 38. He did not participate in two other attempted murders described in detail in paragraphs 20-29 and 30-35 of the PSR. He got a text after the first incident from another NOB member asking for help getting a vehicle back. He got a text of a picture of the intended victim at some point in relation to the second incident. Receiving texts does not make him a participant. It may show that he was a member of the enterprise, which he has admitted, but they do not make him a participant in attempted murders carried out by other NOB members.

Mr. Teixeira discussed retaliation for a drug robbery, as described in ¶¶ 36 and 37 of the PSR, but he did not participate in the armed robbery described in ¶¶ 41-43. Again, he was contacted afterward by phone.

He sold marijuana. *See* PSR at ¶¶ 39, 40 and 45. He did not sell Fentanyl. And he had no involvement in NOB's alleged sex trafficking.

Yet the government urges the court to sentence Mr. Teixeira as if he had participated in all of the criminal conduct engaged in by the NOB enterprise. Sentencing is not one size fits all and does not require that anyone who participated in a RICO enterprise be sentenced based on every crime the enterprise has committed. Instead, the court must craft an individualized sentence that is "minimally sufficient to achieve the broad goals of sentencing." *United States v. Rodriguez*, 527 F.3d 221, 228 (1st Cir. 2008) (emphasis added). The ultimate sentence must be individualized and must comport with the principle that "the punishment should fit the offender

and not merely the crime." *Pepper v. United States*, 562 U.S. 476, 487-88 (2011). And of course, the sentencing guidelines provide only a suggested starting point from which the court is free to vary. *See United States v. Martin*, 520 F.3d 87, 92 (1st Cir. 2008) (affirming sentence with 91 month downward variance where defendant showed significant potential for rehabilitation).

It is neither necessary nor reasonable for the court to impose a sentence here that reflects the universe of NOB's conduct. The five year sentence Mr. Teixeira seeks adequately reflects the seriousness of Mr. Teixeira's criminal conduct and is not greater than that which is necessary to promote sentencing goals.

### 3. The Sentence Mr. Teixeira Seeks Is Reasonable Given Properly Calculated Advisory Sentencing Guidelines

The government and the Probation Office draw a lot of inferences in order to support a Base Offense Level of 33 for the shots fired incident on May 17, 2018, which is reserved for attempted murder. *See* PSR at ¶ 84. Those inferences, however, lack evidentiary support.

The basic facts are that Mr. Teixeira was with other NOB members in a car in rival gang territory, the car stopped, and Mr. Teixeira exchanged gunfire with an armed group of persons. None of Mr. Teixeira's shots struck any member of the other group of shooters. Mr. Teixeira and another occupant of the car were shot. *Id*. at ¶¶ 16-18.

The government asserts that the only way this could have happened is if Mr. Teixeira and other NOB members planned and set out on a "mission" to shoot rival gang members. *See* Government Sentencing Memorandum at 5-6. There is no evidence to support that this was a planned mission to hunt down rival gang members. Given the nature of the ongoing conflicts, it was not unusual for NBOB members to be armed. The government places a lot of weight on the

car being in rival gang territory, but Mr. Teixeira was not the driver of the car and had no ability to stop the driver from going wherever he wanted to go. The location of the car and the shootout does not lead ineluctably to a planned and calculated mission.

The facts more reasonably support an inference that the most fitting charge based on the known evidence is that this was an attempted manslaughter.[2] The appropriate Base Offense Level for that offense is 18, which is adjusted to level 19 under grouping principles, and to level 16 after acceptance of responsibility, which yields an advisory sentencing guideline range of 21-27 months.

Whatever the court determines as the applicable guidelines, Mr. Teixeira suggests that the 60-month sentence he seeks is one that satisfies all sentencing goals.

**Conclusion**

For all of the reasons set forth above, the court should impose sentence of 60 months.

JOSHUA TEIXEIRA
By his attorney,

/s/ *E. Peter Parker*
E. Peter Parker
 B.B.O. #552720
The Wheelhouse at Bradford Mill
33 Bradford St
Concord, MA 01742
(617) 742-9099
peter@parkerslaw.com

---

[2]     The same May 18, 2018 conduct is the subject of a criminal case pending in the Suffolk Superior Court. *See* PSR at ¶¶ 111. The Commonwealth did not charge attempted murder or attempted manslaughter. The lead charge is Attempted Assault and Battery with a Firearm, which carries a maximum 15 year state prison sentence or a 2 1/2 year house of correction sentence. See M.G.L. c. 265, § 15F. Mr. Teixeira was released on $100 personal recognizance.

## Certificate of Service

      I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on September 20, 2022 .

                                                        /s/ *E. Peter Parker*
                                                        E. Peter Parker